UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA HAGAR, GABRIEL HAGAR and Sophia Hagar,<br><br>        Plaintiffs,<br><br>vs.<br><br>ISSAQUAH SCHOOL DISTRICT,<br><br>        Defendant. | No.<br><br><br>COMPLAINT<br><br>(JURY DEMAND) |

Plaintiffs, by and through their attorneys, allege as follows:

## I.   PARTIES

1.1. Plaintiff Sophia Hagar was a student in the Issaquah School District during the entirety of the 2015-2016 and 2016-17 school years and from January 31, 2018 to July 23, 2018.

1.2. Plaintiff Patricia Hagar is Sophia Hagar's mother, and is currently a resident of Bothell, Washington.

1.3. Plaintiff Gabriel Hagar is Sophia Hagar's father, and is currently a resident of Bothell, Washington.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

1.4. Plaintiffs Patricia and Gabriel Hagar were residents of Issaquah, Washington, from October 18, 2007 to July 12, 2017 and from January 20, 2018 to December 20, 2018, after which they relocated to Bothell, Washington.

1.5. On July 23, 2018, Patricia and Gabriel Hagar placed Sophia Hagar at Solstice Residential Treatment Center, located at 1904 W. Gordon Ave., Layton, Utah 84041, where Sophia Hagar remained until Septmeber 3, 2019.

1.6. On September 3, 2019, Sophia Hagar established residency in Bothell, Washington, where she is currently a resident.

1.7. Defendant Issaquah School District is a public school district in Issaquah, Washington.

## II.  JURISDICTION AND VENUE

2.1. This case arises under Washington State law, federal law, and the federal Constitution.

2.2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental or pendent jurisdiction over Washington State claims under § 1367(a).

2.3. Jurisdiction is also proper in this Court pursuant to RCW 4.96.020, because Plaintiffs served tort claims on the Issaquah School District and more than sixty days have passed.

2.4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. FACTUAL ALLEGATIONS

3.1. At the beginning of the 2009-2010 school year, Sophia Hagar began attending at a public elementary school located in the Issaquah School District (the "District").

COMPLAINT (JURY DEMAND)
- PAGE 2 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.2. Melissa Madsen--also known as Melissa Robertson--held the title of Executive Director of Special Education for the District during the 2015-2016, 2016-2017, and 2017-2018 school years.

3.3. At the District, up through the 2019-2020 school year, school counselors were typically responsible for conducting guidance team meetings.

3.4. At the District, up through the 2020-2021 school year, school counselors were typically responsible for conducting guidance team meetings.

3.5. For District middle school and high school teachers without a special education teaching certificate, continuing education in the area of special education was optional from at least the 2014-2015 school year through the 2019-20 school year.

3.6. According to Dr. Dana Bailey, the number of students who are in special education and have an IEP in the District ranges between 9-11 percent of student body.

3.7. According to Dr. Dana Bailey, the District is very attentive to not going to special education too quickly and the District wants to try all tier one interventions and do so with fidelity for a period of time to see if the tier one interventions were going to work before referring a student for special education.

3.8. According to Dr. Dana Bailey, it is common for the District to take a full school year to work through the guidance team process before referring a for an initial evaluation for special education.

3.9. According to Dr. Dana Bailey, as part of the process referenced in paragraph 3.8, an intervention should be attempted for four to six weeks with fidelity and then a guidance team meeting should be held to discuss which interventions are and are not working.

COMPLAINT (JURY DEMAND)
- PAGE 3 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**The 2015-16 School Year**

3.10.  Sophia Hagar attended at Issaquah Middle School ("IMS") during the 2014-15 school year, Sophia Hagar's sixth grade year, and 2015-16 school year, Sophia Hagar's seventh grade school year.

3.11.  AnnaMaria Austin was Sophia Hagar's school counselor at IMS during the 2014-2015 and 2015-2016 school years.

3.12.  On February 9, 2016, Sophia Hagar's math teacher, Susan Ahrensdorf, sent a message to AnnaMaria Austin, stating that Sophia Hagar's math skills were "very low" and that she thought it was "more than just not being on task.  By chance, was she ever evaluated or sent to Guidance at IVE?"

3.13.  Issaquah Valley Elementary ("IVE") is a public elementary school located in the District.

3.14.  Prior to Sophia Hagar matriculating to IMS, she attended at IVE.

3.15.  Susan Ahrensdorf was referring to Issaquah Valley Elementary when she used the acronym "IVE" in her email referenced in paragraph 3.12.

3.16.  Glen Mathis was a school psychologist employed by the District during the 2015-2016 school year.

3.17.  On February 9, 2016, Glen Mathis confirmed in writing to AnnaMaria Austin and Susan Ahrensdorf that there was no record of a guidance team meeting or special education referral for Sophia Hagar.

3.18.  Susan Ahrensdorf did not refer Sophia Hagar to a guidance team or for a special education evaluation, at least in part, because she believed that the staff at IVE

COMPLAINT (JURY DEMAND)
- PAGE 4 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

would have referred Sophia Hagar for a special education evaluation if she had needed to be evaluated for special education eligibility.

3.19. Susan Ahrensdorf's concern regarding Sophia Hagar's "very low" math skills was not shared with Patricia or Gabriel Hagar.

3.20. Sophia Hagar finished the 2015-2016 school year with a letter grade of D+ in math.

3.21. During the 2015-16 school year, Sophia Hagar developed anxiety related to attending school.

3.22. A student receiving a letter grade of D+ in Susan Ahrensdorf's math class would typically cause her to refer the student to guidance team.

3.23. As of July 22, 2020, Susan Ahrensdorf believed she had received no training through the District on its legal obligation to identify, locate, and evaluate students suspected of having a disability that may need special education and related services, also known as IDEA's "child find" mandate.

3.24. As of July 22, 2020, Susan Ahrensdorf received no training through the District on its legal obligation to identify, locate, and evaluate students suspected of having a disability that may need special education and related services, also known as IDEA's "child find" mandate.

3.25. As of the filing of this Complaint, Susan Ahrensdorf received no training through the District on to identify, locate, and evaluate students suspected of having a disability that may need special education and related services, also known as IDEA's "child find" mandate.

3.26. As of July 22, 2020, Susan Ahrensdorf believed that the District's child find obligation did not apply to students that were in middle school or high school.

3.27. As of July 22, 2020, Susan Ahrensdorf did not believe that the District permitted

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

her to refer students assigned to her classroom for special education evaluations.

3.28. Sophia Hagar missed 20 days of school, was tardy 26 times, and her academic grades worsened when compared to her grades earlier in the same school year.

3.29. Patricia Hagar and Sophia Hagar discussed peer relationship and anxiety issues with IMS staff members at a meeting during March 2016.

3.30. Prior to the meeting referenced in paragraph 3.29, Sophia Hagar made a hand gesture by extending her middle finger during a science class taught by Christie Santodomingo.

3.31. Christie Santodomingo believed that the hand gesture made by Sophia Hagar referenced in paragraph 3.30 was directed at Christie Santodomingo.

3.32. The incident referenced in paragraph 3.31 was also discussed during the meeting referenced in paragraph 3.29.

3.33. Sophia Hagar had a meltdown during the meeting referenced in paragraph 3.29.

3.34. AnnaMaria Austin gave Patricia Hagar a list of names of therapists and counselors.

3.35. AnnaMaria Austin encouraged Patricia Hagar to find a counselor to work with Sophia Hagar on her anxiety and emotional issues.

3.36. During the 2015-2016 school year, the District's "special education program procedure" ("2161P") addressed how the District implemented its special education program.

3.36.1. 2161P states that "[a] student or child birth through 21 whether or not enrolled

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

in school, may be referred for a special education evaluation by any source."

3.36.2.   2161P states that "[e]ach building principal and assigned school psychologist will be responsible for ensuring District staff understands the referral process."

3.36.3.   Pursuant to 2161P, one of the ways in which the "District reaches students who may be eligible for special education services [is] through … [w]ritten information and training provided to District staff on referral, evaluation and identification procedures".

3.36.4.   Pursuant to 2161P, the District also "reaches students who may be eligible for special education services through … [r]eview of District collected information around student behavior, discipline, attendance and assessment information."

3.37. 2161P did not undergo any revisions from the 2015-2016 school year until June 1, 2017.

3.38. The District's "Identification and Referral (CHILDFIND)" section of 2161P underwent no substantive revisions when 2161P was revised on June 1, 2017.

3.39. The next time 2161P was revised by the District was on November 1, 2020.

3.40. A school psychologist and/or principal assigned to IMS did not provide all IMS teachers with training on the District's child find obligation during the 2014-2015 school year.

3.41. A psychologist and/or principal assigned to IMS did not provide all IMS teachers with training on the District's child find obligation during the 2015-2016 school year.

3.42. A psychologist and/or principal assigned to IMS did not provide all IMS teachers with training on the District's child find obligation during the 2016-2017 school year.

3.43. A psychologist and/or principal assigned to IMS did not provide all IMS teachers with training on the District's child find obligation during the 2017-2018 school year.

COMPLAINT (JURY DEMAND)
- PAGE 7 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.44. A school psychologist and/or principal assigned to IMS did not provide all IMS teachers with training on the District's child find obligation during the 2018-2019 school year.

3.45. A school psychologist and/or principal assigned to IMS did not provide all IMS teachers with training on the District's child find obligation during the 2019-2020 school year.

3.46. A school psychologist and/or principal assigned to IMS did not provide IMS staff with training on the District's child find obligation during the 2020-2021 school year.

3.47. During the 2015-2016 school year, Sophia Hagar experienced frequent episodes of restless sleeping due to school related anxiety and other school related issues.

3.48. During the 2015-2016 school year, Sophia Hagar frequently felt ill due to school related anxiety and other school related issues.

3.49. During the 2015-2016 school year, Sophia Hagar would frequently cry at school and at home due to school related anxiety and other school related issues.

3.50. During the 2015-2016, school year, Sophia Hagar would frequently call her parents during the school day because school was unbearable for her.

3.51. Most of Sophia Hagar's absences during the 2015-2016 school year were due to school related anxiety.

3.52. During the summer of 2016, Sophia Hagar began seeing a counselor named Doug McClosky.  Doug McClosky recommended that Sophia Hagar be evaluated for a learning impairment.

COMPLAINT (JURY DEMAND)
- PAGE 8 OF 45 -

**The 2016-17 School Year**

3.53. Patricia Hagar, Gabriel Hagar, and Sophia Hagar relocated during the summer of 2016 to a home also located in the District.

3.54. Sophia Hagar attended at Pacific Cascade Middle School, also located within the Issaquah School District, during the 2016-17 school year, her eighth grade school year.

3.55. Dr. Dana Bailey was the Principal at PCMS during the 2016-2017 school year.

3.56. Dr. Dana Bailey began working as a special education teacher during 1989 and continued to work as a special education teacher at several school districts in Washington until sometime during 2001, when she was employed by the District as an administrator.

3.57. As of the 2016-17 school year, Dr. Dana Bailey had not completed her doctorate degree in special education.

3.58. Prior to the start of the 2016-17 school year, Dr. Dana Bailey matriculated into the doctoral program that eventually led to Dr. Dana Bailey receiving a Ph.D in education with a specialization in special education.

3.59. By the start of the 2016-2017 school year, Dr. Dana Bailey had completed two or more years of her Ph.D program.

3.60. Dr. Dana Bailey received her Ph.D in education with a specialization in special education during 2018.

3.61. In October of 2016, Parents had Sophia Hagar evaluated by clinical neuropsychologist Dr. Gayle Fay.

3.62. Dr. Fay concluded that Sophia Hagar qualified for a diagnosis of Attention Deficit Disorder and would need 504 accommodations.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.63. Dr. Fay's evaluation report for Sophia Hagar recommended one-to-one coaching for math.

3.64. Dr. Fay's evaluation report for Sophia Hagar noted that she is hypervigilant to error when learning concepts, which tends to provoke considerable anxiety for her.

3.65. Dr. Fay suspected that Sophia Hagar required special education services and believes that her evaluation of Sophia Hagar should have placed the District on notice that Sophia Hagar needed to be evaluated for eligibility for special education services.

3.66. Patricia Hagar provided a copy of Dr. Fay's evaluation report for Sophia Hagar to Sonja Petersen during October of 2016.

3.67. Sonja Petersen was Sophia Hagar's assigned PCMS counselor during the 2016-2017 school year.

3.68. Prior to the start of the 2016-2017 school year, Sonja Petersen knew that Sophia Hagar struggled academically during the 2015-2016 school year based on the grades she received.

3.69. Kathleen McConnell was Sophia Hagar's study skills class teacher at PCMS during the 2016-2017 school year.

3.70. Sophia Hagar was placed in a study skills class at the beginning of the 2016-2017 school year because of her low academic grades from the prior school year.

3.71. The study skills class Sophia Hagar was placed in for the 2016-2017 school year is not a special education class.

3.72. According to Kathleen McConnell, she did a lot of one-on-one work with Sophia Hagar, which helped Sophia Hagar complete her schoolwork.  Sophia Hagar

COMPLAINT (JURY DEMAND)
- PAGE 10 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

would lose focus when she was not provided with one-on-one support in study skills class.

3.73. Erin Kwok Tak Hing ("Erin Kwok") was Sophia Hagar's English Language Arts teacher at PCMS during the 2016-2017 school year.

3.74. During the 2018-2019 and 2019-2020 school years, Erin Kwok co-taught English Language Arts classes with a special education teacher.

3.75. Darrell Nichols was Sophia Hagar's math teacher at PCMS during the 2016-2017 school year.

3.76. Sonja Petersen recalls Sophia Hagar having spotty attendance, being absent more days than most students, and exhibiting anxiety.

3.77. Sonja Petersen recalls Sophia Hagar exhibiting signs of depression, including (1) challenges with social relationships in the school setting, (2) attendance issues, and (3) struggles at home with Patricia and Gabriel Hagar.

3.78. Sonja Petersen was aware that Student received unsatisfactory or failing grades during the second and third trimesters of the 2016-2017 school year.

3.79. During the 2016-17 school year, Sonja Petersen understood that Parents were experiencing challenges with getting Sophia Hagar to attend school and Sophia Hagar was having challenges with social relationships.

3.80. On October 21, 2016, during a hallway conversation between Sonja Petersen and Patricia Hagar, Sonja Petersen told Patricia Hagar that an IEP is for students with more severe disabilities, and she did not believe Sophia Hagar would qualify for an IEP.

3.81. During the same conversation on October 21, 2016, Patricia Hagar clarified what Sonja Petersen meant by more severe disabilities, and asked if Sonja Petersen meant Down's

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

Syndrome.

3.82. Sonja Petersen responded in the affirmative to Patricia Hagar's question and provided no additional information or context.

3.83. On October 21, 2016, a guidance team meeting was held to discuss Sophia Hagar.

3.84. At the District, up through the 2016-2017 school year, school counselors were typically responsible for conducting guidance team meetings.

3.85. Sophia Hagar's guidance team agreed to reconvene in four to six weeks to discuss interventions implemented for Sophia Hagar and whether to evaluate Sophia Hagar for a 504 plan.

3.86. As early as October of 2016, Kathleen McConnell believed that Sophia Hagar had a disability of attention deficit disorder ("ADD").

3.87. Kathleen McConnell also recognized during the 2016-2017 school year that Sophia Hagar presented with anxiety.

3.88. Kathleen McConnell believed that Sophia Hagar's absenteeism was behavior based, in that she did not attend school because she was embarrassed by her behavior at school.

3.89. At some point during the 2016-2017 school year, Sonja Petersen communicated to Kathleen McConnell that Sophia Hagar's absenteeism was due to school-related anxiety.

3.90. Kathleen McConnell believed that when Sophia Hagar acted insubordinate, it was attention seeking behavior.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.91. Kathleen McConnell expressed her concern about Sophia Hagar's issues with focusing during class time to Sonja Petersen and other teachers at PCMS.

3.92. On October 27, 2016, Prime Numbers assessed Sophia Hagar for math.

3.93. Parents shared the Prime Numbers evaluation report with PCMS staff.

3.94. The Prime Numbers evaluation report placed Sophia Hagar well below grade level in the area of math.

3.95. Upon receiving Sophia Hagar's evaluation report from Prime Numbers, Dr. Dana Bailey did not refer Sophia Hagar for a special education and did not discuss special education with Patricia or Gabriel Hagar as a potential option for Sophia Hagar.

3.96. After Dr. Dana Bailey received the Prime Numbers evaluation report, she discussed with Patricia Hagar moving Sophia Hagar to a math class of mostly sixth grade students or a seventh grade math class.

3.97. According to Darrell Nicholls, Dr. Bailey suggested moving Sophia Hagar from her eigth grade level content math class to a seventh grade level content math class.

3.98. According to Dr. Dana Bailey, she has been familiar with "child find" as a term of art since she was a special education teacher.

3.99. On July 15, 2020, Dr. Bailey described child find as "the function where individuals can bring forth concerns about a student's ability to access their education." Dr. Bailey believes that a school district's child find obligation extends to a student's school counselor, principal, and school nurse.

3.100. Prior to the 2015-2016 school year, Dr. Bailey believed that a school district's child find obligation extends to a school district's teachers.

COMPLAINT (JURY DEMAND)
- PAGE 13 OF 45 -

3.101. According to Dr. Dana Bailey, a District employee is supposed to refer a student to guidance team for consideration for a special education evaluation when a District employee has knowledge of or suspects a disability or a lack of access.

3.102. During the 20-2016 school year, the District's "special education program procedure" ("2161P") addressed how the District implemented its special education program.

3.103. 2161P states that "[a] student or child birth through 21 whether or not enrolled in school, may be referred for a special education evaluation by any source."

3.104. 2161P states that "[e]ach building principal and assigned school psychologist will be responsible for ensuring District staff understands the referral process."

3.105. Pursuant to 2161P, one of the ways in which the "District reaches students who may be eligible for special education services [is] through … [w]ritten information and training provided to District staff on referral, evaluation and identification procedures".

3.106. Pursuant to 2161P, the District also "reaches students who may be eligible for special education services through … [r]eview of District collected information around student behavior, discipline, attendance and assessment information."

3.107. Dr. Dana Bailey did not provide training on the District's child find obligation to PCMS staff during the 2014-2015, 2015-2016, and 2016-2017 school years.

3.108. Dr. Dana Bailey does not know if anyone provided PCMS staff with training on the District's child find obligation during the 2014-2015, 2015-2016, and

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

2016-2017 school years.

3.109. As of July 16, 2020, Kathleen McConnell was vaguely familiar with the term "child find" in the context of special education. At the time, she believed "child find" was part of the process to qualify students for individualized education programs and 504 plans.

3.110. As of July 16, 2020, Erin Kwok had not received training related to special education through the District other than a singular workshop she attended that may have touched on special education related issues.

3.111. Prior to the 2016-2017 school year Erin Kwok's only education and instruction in special education related issues was through her college coursework.

3.112. As of July 16, 2020, Erin Kwok believed that continuing education in the area of special education was optional for District staff without a special education teaching certificate.

3.113. As of July 16, 2020, Erin Kwok was not familiar with the special education term "child find".

3.114. According to Erin Kwok, she will refer a student to Guidance Team for consideration for a special education evaluation when she learns through a parent that the student has a disability or based on her own observations.

3.115. According to Kathleen McConnell, Sophia Hagar was able to grasp academic content when she worked with her; therefore, she did not believe Sophia Hagar needed special education.

3.116. Kathleen McConnell did observe Sophia Hagar presenting with challenges in the area of executive functioning and executive functioning skills were an area of concern Kathleen McConnell had for Sophia Hagar.

COMPLAINT (JURY DEMAND)
- PAGE 15 OF 45 -

3.117. Kathleen McConnell was also concerned for Sophia Hagar in the area of social/emotional.

3.118. Kathleen McConnell believed that a Section 504 plan was sufficient for Sophia Hagar because she never saw Sophia Hagar struggle to understand academic concepts.

3.119. According to Erin Kwok, Sophia Hagar was frequently absent from class due to anxiety.

3.120. According to Erin Kwok, Sophia Hagar was easily distracted and struggled to focus on reading during class.

3.121. Erin Kwok had discussions with other teachers about Sophia Hagar approximately once a week or every other week to try and find a solution for the challenges Sophia Hagar was having at PCMS.

3.122. Erin Kwok had five or more conversations with Dr. Dana Bailey about Sophia Hagar's challenges at PCMS.

3.123. Erin Kwok had twelve or more conversations with Sonja Petersen about Sophia Hagar's challenges at PCMS.

3.124. According to Erin Kwok, she did not suspect that Sophia Hagar had a disability, but she did recall attending a meeting where she was notified that Sophia Hagar had a diagnosis of ADD.

3.125. As of July 16, 2020, Erin Kwok did not believe that a student with ADD could qualify for special education and related services.

3.126. As of July 16, 2020, Erin Kwok did not believe that a student with attention

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

hyperactivity disorder could qualify for special education and related services.

3.127. As of July 16, 2020, Erin Kwok believed that special education is exclusively for students with academic related disabilities.

3.128. As of July 16, 2020, Erin Kwok believed that an anxiety disorder is not a qualifying disability under IDEA.

3.129. On November 2, 2016, Dr. Dana Bailey sent an e-mail to Sonja Petersen regarding Sophia Hagar, stating in part, "given that we see a real and debilitating issue for Sophie, and one idea is to look at doing a few things well and truly lighten her load."  Dr. Dana Bailey's email goes on to state the Sophia Hagar's principal at IMS reported to Dr. Dana Bailey that Sophia Hagar was the "central drama of all things in her grade" and Dr. Dana Bailey ended her email by stating, "I think [Sophia Hagar's] true learning struggles may have been masked by all this drama!"

3.130. Seth Adams with the Principal at IMS during the 2015-2016 and 2016-2017 school years.

3.131. Dr. Dana Bailey spoke with Seth Adams about Sophie Hagar before sending the email referenced in paragraph 3.129.

3.132. Dr. Dana Bailey was aware that Sophia Hagar was frequently absent from school during the second half of the 2016-2017 school year.

3.133. Dr. Dana Bailey's use of the phrase "true learning struggles" referenced in paragraph 3.129 was intended to mean Sophia Hagar's inability to attend school, inability to focus during school, and inability to stay out of distractions from school.

3.134. According to Dr. Dana Bailey, during the 2016-2017 school year, she had as many

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

as ten in-person meetings with Patricia and/or Gabriel Hagar about Sophia Hagar.

3.135. Dr. Dana Bailey was included on several emails that referenced Sophia Hagar having anxiety.

3.136. Patricia Hagar orally communicated with Dr. Dana Bailey about Sophia's anxiety issues.

3.137. Dr. Dana Bailey knew that Sophia Hagar would stay in the PCMS restrooms to avoid going to her classes.

3.138. Dr. Dana Bailey was responsible for reviewing PCMS students' mid-trimester and trimester academic report cards.

3.139. As a matter of practice, Dr. Dana Bailey reviewed Sophia Hagar's mid-trimester and trimester academic report cards throughout the 2016-2017 school year.

3.140. The next time Sophia Hagar's guidance team reconvened was during February of 2017.

3.141. On or about October 7, 2016, Sonja Petersen knew that Sophia Hagar had a disability or disabilities.

3.142. Sonja Petersen suspected that Sophia Hagar's disability or disabilities were interfering with her academics.

3.143. On December 1, 2016, in an email to Dr. Dana Bailey and Sonja Petersen, Patricia Hagar questioned whether Sophia Hagar is emotionally capable of handling public middle school and requested their feedback on three different private schools as alternative schooling options for Sophia Hagar

3.144. Sonja Petersen replied to Patricia Hagar's email dated December 1, 2016,

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

that Sonja Petersen had "many of these same issues in her head."

3.145. Dr. Dana Bailey did not offer Patricia Hagar or Gabriel Hagar any feedback, written or oral, in response to Patricia Hagar's request for feedback on private schools in her email dated December 1, 2016.

3.146. Sonja Petersen did not offer Patricia Hagar or Gabriel Hagar any feedback, written or oral, in response to Patricia Hagar's request for feedback on private schools in her email dated December 1, 2016.

3.147. If an email was directed to Dr. Dana Bailey, as a matter of practice, she would read the email when she received the email or shortly thereafter.

3.148. In early January 2017, Sophia Hagar was involved in a racially and sexually charged verbal altercation with a male PCMS student. The male student referred to Sophia Hagar as a "slut", "ho", accused her of taking sex for money, made a vulgar gesture in her direction indicating oral copulation and then stated something to the effect of "that is what she does all night." The male student also made disparaging remarks about Sophia Hagar's physical features, her intellect, and her ancestry. Sophia Hagar was suspended for her offensive statement to the male student.

3.149. Dr. Bailey was aware of the incident described in paragraph 3.148 and was informed of disciplinary action taken against Sophia Hagar for her part in the incident. With respect to Sophia Hagar's conduct, Dr. Bailey was concerned by the situation.

3.150. On February 1, 2017, Patricia Hagar inquired about Sophia Hagar transferring from PCMS to a different middle school within the District.

3.151. On February 2, 2017, Saskia VonMichalofski, Sophia Hagar's prescribing nurse

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

practitioner, wrote a letter regarding Sophia Hagar that was provided to the District.

3.152. Saskia VonMichalofski's letter states that Sophia Hagar's anxiety contributed to her missing school and would continue to do so.

3.153. By no later than March of 2017, Dr. Dana Bailey believed that Sophia Hagar's escalating behaviors were adding to the interference of her education.

3.154. On March 17, 2017, Sophia Hagar called the District Superintendent's Office and spoke with or left a message with Debbie Romano, District Operations Coordinator, that Debbie Romano recalls was "alarming enough" to contact Dr. Dana Bailey.

3.155. On March 21, 2017, Sophia Hagar was at least partially responsible for a cyberbullying incident involving students from IMS.

3.156. That same day, Dr. Dana Bailey sent an email to Sonja Petersen stating in part that she was "egregiously worried about [Sophia Hagar's] mental health.  Dr. Dana Bailey went on to write, "I think she is having some sort of mental health break and I am really, really worried."

3.157. The District referred the cyberbullying incident referenced in paragraph 3.155 to the police.

3.158. Shortly after it was discovered that Sophia Hagar was at least partially responsible for the cyberbullying incident, she repeatedly threatened to kill herself and was taken to a hospital emergency room for examination.

3.159. At one point, Dr. Dana Bailey and Patricia Hagar spoke over the telephone while Sophia Hagar threatened to kill herself and/or said she wanted to die.

COMPLAINT (JURY DEMAND)
- PAGE 20 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.160. During the telephone conversation between Dr. Dana Bailey and Patricia Hagar, Dr. Dana Bailey overheard Sophia Hagar stated that she wanted to kill herself and/or that she wanted to die.

3.161. On March 23, 2017, while Dr. Dana Bailey and Patricia Hagar were sending one another e-mail communications about the cyberbullying incident involving Sophia Hagar, Dr. Dana Bailey wrote to Patricia Hagar, "I love you. Over and over. Thanks."

3.162. On March 26, 2017, Parents emailed Dr. Dana Bailey and Sonja Petersen.  In the email, Parents ask whether the District could complete Sophia Hagar's Section 504 plan while acknowledging that it is "a lot to ask".

3.163. The same March 26, 2017 email addresses Sophia Hagar returning to PCMS and Parents state at the end of the email, "I hope this is OK with you, please let me know and if not we'll make other plans for Tuesday onward."

3.164. On March 31, 2021, Sophia Hagar's initial Section 504 Accommodation Plan went into effect.

3.165. Sophia Hagar qualified for her initial Section 504 Accommodation Plan due to her anxiety and ADD.

3.166. Dr. Bailey was aware that Sophia Hagar did not receive a Section 504 Accommodation Plan until March 31, 2017.

3.167. The accommodations included on Sophia Hagar's initial Section 504 Accommodation plan were substantively the same accommodations and/or interventions the District had previously attempted during the 2016-2017 school year.

3.168. On May 18, 2017, Sophia Hagar received an emergency expulsion from PCMS,

FORD LAW FIRM PLLC
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

which was later converted to a short-term suspension, for what the District characterized as an act of arson by Sophia Hagar.

3.169. Darrel Nichols did not believe that any of the interventions were successful that he attempted in the classroom setting for Sophia Hagar.

3.170. According to Dr. Bailey, suicide prevention training is required training that is provided to District staff every school year.

3.171. According to the District's training materials on suicide prevention, which is titled "Recognizing and Responding to Emotional or Behavioral Distress in Students", when District employee observes warning signs that a student may be at risk of suicide, the District employee is to "note the behavior and consult with [their] school counselor, principal, dean/assistant principal to ensure appropriate and quick assessment and treatment.  It may also be appropriate to also refer the student to the school's Guidance Team."

3.172. The same training also includes instruction that if a District employee believes "that a student is in danger of harming him- or herself.  Contact the principal, dean/assistant principal, counselor, **immediately** to share your concerns."

3.173. Finally, the same training also requires District employees to contact the "the troubled student['s] … parents or legal guardian" except for in limited circumstances where the District employee believes that contacting the parents or legal guardian "may further endanger the child."

3.174. *13 Reasons Why* is a novel that was adapted into a television series.  The novel and the television series follow roughly the same plot in which Hannah Baker, a

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

female high school student, commits suicide.  Post-mortem, Hannah Baker leaves cassette tapes for thirteen of her classmates chronicling their responsibility in Hannah Baker's decision to end her life.

3.175. At some point during the 2016-2017 school year, Sonja Petersen informed Dr. Bailey of the premise of the *13 Reasons Why* television series.

3.176. Sonja Petersen told Dr. Dana Bailey something to the effect of that that *13 Reasons Why* "was probably going to trigger some students."

3.177. On April 25, 2017, PCMS's Counseling Office submitted a post about *13 Reasons Why* to the District's "Connect" message board.  The message board post includes an attachment titled "13 Reasons Why Talking Points."

3.178. On May 2, 2017, Kathleen McConnell emailed Dr. Dana Bailey and Sonja Petersen, informing them that "[a]t the end of the [class] period [Sophia Hagar] started to list off who she would make tapes for if she was in *13 Reasons Why*."  Kate McConnell concluded the email, "I think it would be best if she had a break from Study Skills since she doesn't really seem motivated to do any work at this point in the year."

3.179. As of July 16, 2020, Kathleen McConnell could not recall having any training on suicide prevention through the District.

3.180. As of May 2, 2017, Kathleen McConnell was familiar enough with the plot of *13 Reasons Why* to know that the main character commits suicide.

3.181. Dr. Dana Bailey contacted Patricia Hagar to notify her that Sophia Hagar was not meeting expectations in her study skills class but did not inform Patricia or Gabriel Hagar that Sophia Hagar had referenced making suicide tapes like Hannah Baker does in *13 Reasons Why*.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.182. Sonja Petersen had knowledge of the plot of *13 Reasons Why* prior to May 2, 2017.

3.183. Sonja Petersen described Kate McConnell's email referenced in paragraph 3.178 as alarming or being alarmed by the e-mail but she took no further action to address the e-mail other than forwarding the email to the Dean of Students Marcy O'Neill.

3.184. By the end of the 2016-17 school year, Sophia Hagar accumulated 63.20 days of excused absences, 17.98 days of unexcused absences, 40 incidents of tardiness to class periods, and all unsatisfactory grades.

3.185. According to Kathleen McConnell, Sophia Hagar would interfere with other students' ability to learn in the classroom setting multiple times a week throughout the school year.

3.186. According to Kathleen McConnell, Sophia Hagar's absences from her class interfered with her education.

3.187. According to Erin Kwok, Sophia Hagar's absences from her class interfered with her ability to access her academics.

3.188. Sophia Hagar's academic grades declined throughout the school year as the District continued to attempt what were substantively the same interventions.

3.189. According to Dr. Dana Bailey, special education is not necessarily discussed during guidance team meetings.

3.190. Special education was not discussed during either of Sophia Hagar's guidance team meetings during the 2016-2017 school year.

3.191. Patricia Hagar trusted Dr. Dana Bailey and believed they were friends.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.192. Dr. Dana Bailey intentionally cultivated a friendly relationship with Patricia Hagar.

3.193. Patricia Hagar was led to believe by some PCMS staff that the District had gone above and beyond what was required of the District to meet Sophie Hagar's needs in the academic setting.

3.194. On August 1, 2017, Dr. Dana Bailey sent an email to Patricia Hagar in which she stated in part, "I have prayed and prayed all summer that [Sophia Hagar] settles in quickly."

3.195. Dr. Dana Bailey does not recall praying a single time for Sophia Hagar during the summer of of 2017.

3.196. Other than Sonja Petersen's hallway conversation with Patricia Hagar on October 21, 2016, no District employee discussed the option of evaluating Sophia Hagar for special education eligibility with Parents during the 2016-2017 school year.

3.197. During the 2016-2017 school year, Sophia Hagar suffered from frequent bouts of anxiety that directly attributed to her school absences.

3.198. During the 2016-2017 school year, Sophia Hagar experienced frequent episodes of restless sleeping due to school related anxiety and other school related issues.

3.199. During the 2016-2017 school year, Sophia Hagar frequently felt ill due to school related anxiety and other school related issues.

3.200. During the 2016-2017 school year, Sophia Hagar would frequently cry at school and at home due to school related anxiety and other school related issues.

3.201. During the 2016-2017, school year, Sophia Hagar would frequently call her parents during the school day because school was unbearable for her.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.202. During the 2016-2017 school year, Sophia Hagar experienced hyperhidrosis that was triggered by school and eventually diagnosed while the Hagars were in Texas.

3.203. Sophia Hagar suffered severe emotional pain while she attended at IHS due to feelings of low self-worth and anxiety which were directly related to the District's failure to timely and appropriately intervene on Sophie's behalf in the academic setting.

### The 2017-18 School Year

3.204. Sophia Hagar relocated to Texas during the summer prior to Sophia Hagar's ninth grade school year, the 2017-18 school year, where Sophia Hagar attended at public and private schools for approximately a total of one semester. Parents enrolled Sophia Hagar at Keller High School in Texas but during her first few days of school, Sophia Hagar hid in bathrooms and refused to go to school.

3.205. Parents then enrolled Sophia Hagar at Indian Springs Middle School, also located in Texas, for eighth grade.

3.206. Sophia Hagar attended at Indian Springs Middle School for approximately one week but stopped attending due to experiencing anxiety.

3.207. Based on the recommendation of a school counselor at Indian Springs Middle School, during September of 2017, Parents enrolled Sophia Hagar at Mind Above Matter, an outpatient program also located in Texas.

3.208. Sophia Hagar completed the Mind Above Matter program after approximately six to seven weeks.

3.209. On October 20, 2017, Parents enrolled Sophia Hagar at Fusion Academy,

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

a one-on-one student to teacher learning model school.

3.210. Sophia Hagar received passing letter grades for the four courses she enrolled in while attending at Fusion Academy.

3.211. Sophia Hagar felt depressed and isolated while living in Texas.

3.212. Patricia Hagar, Gabriel Hagar, and Sophia Hagar, relocated back to Issaquah, Washington during January of 2018 and Sophia Hagar attended at Issaquah High School for approximately one semester during the second half of the 2017-18 school year. Parents enrolled Sophia Hagar at Issaquah High School ("IHS").

3.213. IHS is located within the boundary lines of the District.

3.214. Emily Combellick (formerly Tuttle) was Sophia Hagar's school counselor at IHS.

3.215. Emily Combellick has held a school counselor position with IHS since October of 2011.

3.216. After Sophia Hagar was enrolled at IHS, Emily Combellick spoke with Sonja Petersen about Sophia Hagar.

3.217. Before Sophia Hagar began attending at IHS, Emily Combellick knew of Sophia Hagar's history of poor school attendance and Emily Combellick was worried that Sophia Hagar would have poor school attendance at IHS even before Sophia Hagar's first day of attendance at IHS.

3.218. None of Sophia Hagar's records that were available to Emily Combellick referenced that Sophia Hagar had threatened to commit suicide during the 2016-2017 school year.

3.219. None of Sophia Hagar's records that were available to Emily Combellick

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

referenced that Sophia Hagar had refercend *13 Reasons Why* or making tapes like the main character in *13 Reasons Why*.

3.220. During 2017, Emily Combellick did not review Sophia Hagar's cumulative file.

3.221. During 2017, Emily Combellick did not review Sophia Hagar's disciplinary file.

3.222. Prior to February 2017, the District had not created a record related to Sophie Hagar threatening, referencing, or discussing suicide other than the email chain started by Kathleen McConnell on May 2, 2017.

3.223. On or before February 12, 2018, Emily Combellick reviewed Sophia Hagar's Section 504 plan created by PCMS during the 2016-17 school year.

3.224. On or before February 12, 2018, Emily Combellick knew or believed that Sophia Hagar's school attendance issue was related to Sophia Hagar's anxiety issue.

3.225. January 31, 2018, was the first day Sophia Hagar attended at IHS.

3.226. On January 31, 2018, Sophia Hagar met with Allison Cathro, the IHS school nurse, and did not complete the school day due to social media posted by at least one other student that made Sophia Hagar feel uncomfortable.

3.227. On January 31, 2018, Allison Cathro informed Emily Combellick that Sophia Hagar had come to see Allison Cathro and asked if Emily Combellick was available to support Sophia Hagar.

3.228. On February 4, 2018, Sophia Hagar attempted suicide, resulting in hospitalization.

COMPLAINT (JURY DEMAND)
- PAGE 28 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.229. On February 6, 2018, Sophia Hagar informed Allison Cathro of her attempted suicide.

3.230. Sophia Hagar notified Allison Cathro of her suicide attempt because her body was in pain from convulsing as a result of her suicide attempt.

3.231. Shortly thereafter, on February 6, 2018, Allison Cathro informed Emily Combellick of Sophia Hagar's suicide attempt.

3.232. Upon learning that Sophia Hagar had recently attempted suicide, Emily Combellick took no further action to identify additional services for Sophia Hagar in the academic setting due to Sophia Hagar exhibiting signs of depression, anxiety, self-harm, and/or suicidal ideations.

3.233. On February 12, 2018, Parents attended a 504 meeting with Emily Combellick and Douglas Wolff, Assistant Principal at IHS.

3.234. According to Douglas Wolf, he does not spend a lot of time reviewing information from the eighth grade school year of incoming ninth grade students assigned to him because he likes to give students a "fresh start".

3.235. According to Douglas Wolf, the fresh start that is referenced in paragraph 3.234 is in the spirit of the special education concept of "least restrictive environment".

3.236. According to Douglas Wolf, because Sophia Hagar was not referred for an initial evaluation for special education during middle school, IHS assumed that 504 plan was appropriate for her.

3.237. IHS staff knew that Sophia Hagar experienced relative academic success at Fusion Academy, where she had a one-on-one academic instructor, while she was living in Texas.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.238. At the time of the 504 meeting on February 12, 2018, Emily Combellick believed that Sophia Hagar's eighth grade 504 plan and the proposed ninth grade 504 plan were substantially similar.

3.239. No other 504 meetings were held for Sophia Hagar by the District during the 2017-18 school year.

3.240. During the 2017-2018 school year, IHS did not distribute IHS students' 504 plans to their respective teachers.

3.241. During the 2017-2018 school year, it was IHS teachers' responsibility to check their students' electronic files to determine each student assigned a 504 plan.

3.242. Special education was not discussed during Sophia Hagar's 504 meeting on February 12, 2018.

3.243. No one from the District discussed with Parents special education as a potential option for Sophia Hagar during the 2017-18 school year.

3.244. Sophia Hagar's 504 plan, effective February 13, 2018, states one hypothesis, which is: "[Sophia Hagar's] anxiety has contributed to a lot of absences and attendance issues in the past. [Sophia Hagar] and her parents hope that this has improved and that she will be able to attend more regularly moving forward."

3.245. Sophia Hagar's 504 plan with an effective date of February 13, 2018, includes five accommodations, which were intended by the District to address the hypothesis, which is included on the same 504 plan.

3.246. On February 13, 2018, Patricia Hagar emailed Emily Combellick about Sophia Hagar struggling to attend her first period class at IHS.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.247. On February 14, 2018, Kurtis Evans, Sophia Hagar's math teacher at IHS, emailed Emily Combellick that Sophia Hagar was considering dropping Algebra.

3.248. On February 16, 2018, Kurtis Evans emailed Emily Combellick that Sophia Hagar had attended two or three days of class during the semester and he was concerned.

3.249. That same day, IHS students reported to Emily Combellick that Sophia Hagar had drugs on her person and Sophia Hagar was physically searched at IHS; no drugs were found.

3.250. On February 26, 2018, Sophia Hagar began seeing psychiatrist, Dr. Marisol Toliver-Sokol.

3.251. During the 2017-18 school year Erin Connolly was an administrative intern at IHS that was subsequently hired by the District as Assistant Principal at IHS.

3.252. By March 20, 2018, Erin Connolly was concerned about Sophia Hagar's attendance at IHS.

3.253. On March 20, 2018, Emily Combellick offered to Patricia Hagar to send a survey request for additional feedback from Sophia Hagar's IHS teachers.

3.254. Erin Connolly was unsure if the interventions attempted by the District for Sophia Hagar during the 2017-18 school year were successful due to Sophia Hagar not attending class.

3.255. On March 27, 2018, on the IHS campus, a group of boys physically restrained Sophia Hagar , while another boy kissed Sophia Hagar.

3.256. A number of IHS student's rushed over to the area where Sophia Hagar was being physically restrained.

3.257. District staff and/or employees did not intervene on Sophia Hagar's behalf for the incident refered to in paragraph 3.255.

COMPLAINT (JURY DEMAND)
- PAGE 31 OF 45 -

3.258. Most or all of the boys that restrained Sophia Hagar were on IHS's baseball team.

3.259. The boys that restrained Sophia Hagar were at school the following day and were disciplined for their acts in no discernable way, if at all.

3.260. On April 26, 2018, Emily Combellick emailed Patricia Hagar teacher feedback from a teacher survey of Sophia Hagar.

3.261. IHS teacher feedback from the survey expressed concerns regarding Sophia Hagar's absences from class, Sophia Hagar being easily distracted, Sophia Hagar's missing assignments, and Sophia Hagar's lack of follow through.

3.262. According to Emily Combellick, the teacher feedback she received was that Sophia Hagar's issues with attendance was interfering with her academics.

3.263. Kurtis Evans, Sophia Hagar's math teacher at IHS, identified Sophia Hagar as presenting with anxiety as part of the feedback he provided in the teacher survey referenced in paragraphs 3.260 and 3.261.

3.264. The District did not make changes to Sophia Hagar's 504 plan or refer Sophia Hagar for an initial evaluation for special education.

3.265. On May 15, 2018, Sophia Hagar was emergency expelled from IHS.

3.266. The District converted Sophia Hagar's emergency expulsion to a 90-day long-term suspension that was later reduced to a 10-day suspension.

3.267. Parents appealed Sophia Hagar's suspension and an appeal hearing was held on June 13, 2018.

3.268. Douglas Wolff attended the appeal hearing held for Sophia Hagar on June

COMPLAINT (JURY DEMAND)
- PAGE 32 OF 45 -

13, 2018.

3.269. At the time of Sophia Hagar's appeal hearing, Douglas Wolf knew Sophia Hagar was failing five of her six classes at IHS, knew she had a general anxiety disorder, knew she was receiving outside treatment for the general anxiety disorder, and believed Sophia Hagar's anxiety disorder was having a significant impact on Sophia Hagar's attendance.

3.270. As of July 20, 2020, Allison Cathro had not received any training through the District related to the District's child find obligation under IDEA.

3.271. As of July 20, 2020, Allison Cathro had not received any training through the District related special education.

3.272. As of July 20, 2020, Emily Combellick believed that she had received no training through the District related to the District's child find obligation under IDEA.

3.273. As of July 20, 2020, Emily Combellick had not received any training through the District related to the District's child find obligation under IDEA.

3.274. Typically, Emily Combellick is notified through the District if a student assigned to her is known to have experienced suicidal ideations.

3.275. As of August 17, 2020, Kurtis Evans was not familiar with the term "child find".

3.276. According to Kurtis Evans, IHS teachers do not receive training on when to refer IHS students for intial evaluations for special education.

3.277. According to Kurtis Evans, as of August 17, 2020, IHS teachers did not receive training on refering IHS students for intial evaluations in special education.

3.278. As of the 2017-2018 school year, the District and or its agents counseled IHS teachers to not refer IHS students for intial evaluations for special education.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.279. As of July 20, 2020, Emily Combellick's familairity with the term "child find" was limited to hearing the term used during special education related meetings.

3.280. According to Emily Combellick, she does not often work in the special education world.

3.281. During the 2017-2018 school year, Emily Combellick was responsible for coordinating and overseeing guidance team meetings for students assigned to her.

3.282. During the 2017-2018 school year, Emily Combellick was responsible for coordinating and overseeing 504 team meetings for students assigned to her.

3.283. During the 2017-2018 school year, Emily Combellick was responsible for refering students assigned to her for initial special education evaluations.

3.284. Emily Combellick did not feel that the interventions put in place by the District for Sophia Hagar during the 2017-18 school year were successful.

3.285. According to Emily Combellick, at IHS every intervention must in the general education setting must be attempted before refering a student for a special education evaluation.

3.286. At some point during the 2017-2018 school year, Erin Connolly knew that Sophia Hagar's 504 plan interventions were not effecive.

3.287. A school psychologist and/or principal assigned to IHS did not provide all IHS teachers with training on the District's child find obligation during the 2014-2015 school year.

3.288. A psychologist and/or principal assigned to IHS did not provide all IHS teachers with training on the District's child find obligation during the 2015-2016 school

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

year.

3.289. A psychologist and/or principal assigned to IHS did not provide all IHS teachers with training on the District's child find obligation during the 2016-2017 school year.

3.290. A psychologist and/or principal assigned to IHS did not provide all IHS teachers with training on the District's child find obligation during the 2017-2018 school year.

3.291. A school psychologist and/or principal assigned to IMS did not provide all IHS teachers with training on the District's child find obligation during the 2018-2019 school year.

3.292. A school psychologist and/or principal assigned to IHS did not provide all IHS teachers with training on the District's child find obligation during the 2019-2020 school year.

3.293. A school psychologist and/or principal assigned to IHS did not provide IHS staff with training on the District's child find obligation during the 2020-2021 school year.

3.294. Sophia Hagar failed all of her classes at IHS during the 2017-18 school year.

3.295. Sophia Hagar had 40 absences and was either tardy or absent for her first period class 64 times at IHS during the 2017-18 school year.

3.296. During the 2016-2017 school year, Sophia Hagar suffered from anxiety and depression that directly attributed to her school absences.

3.297. During the 2017-2018 school year, Sophia Hagar experienced frequent episodes of restless sleeping due to school related anxiety and other school related issues.

3.298. During the 2017-2018 school year, Sophia Hagar frequently felt ill due to school related anxiety and other school related issues.

3.299. During the 2017-2018 school year, Sophia Hagar would frequently cry at school and at home due to school related anxiety and other school related issues.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.300. During the 2017-2018 school year Sophia engaged in self-harming behaviors that include cutting and attempting suicide that was directly related to anxiety, depression, and low self-worth due to her experience in the District.

3.301. During the 2017-2018 school year, Sophia Hagar experienced hyperhidrosis that was triggered by school.

3.302. During the second half of the 2017-2018 school year, Sophia Hagar acquired substance abuse issues that were directly related to her school related anxiety, depression, and feelings of low self-worth as it relates to school.

3.303. Sophia Hagar suffered severe physical and emotional pain while she attended at IHS due to self-harming events, some of which the District was aware of, and due to feelings of low self-worth, depression, and anxiety, all of which were directly related to the District's failure to timely and appropriately intervene on Sophie's behalf in the academic setting.

### The Summer of 2018 and Sophia Hagar's Placement at Solstice

3.304. Patricia Hagar contacted and began gathering information on Solstice on June 18, 2018.

3.305. Solstice is a residential treatment center in Layton, Utah, that serves biologically female youth ages 14 through 18.

3.306. Solstice is a "nonpublic agency" ("NPA") recognized by Washington Office of Superintendent of Public Instruction.

3.307. From June 20, 2018, through July 15, 2018, Sophia Hagar had three documented incidents of overdosing on alcohol.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.308. Sara Young is a substance use disorder counselor at Friends of Youth, which is located in Washington state.

3.309. Sophia Hagar met with Sara Young on July 13, 2018 and Sara Young recommended Sophia Hagar attend inpatient treatment, based on, among other reasons, Sophia Hagar's substance use and her social environment in Issaquah, Washington.

3.310. On July 16, 2018, Dr. Toliver-Sokol met with Parents and recommended that Sophia Hagar be placed in an inpatient care program.

3.311. On July 17, 2018, Parents paid the deposit to secure a bed for Sophia Hagar at Solstice.

3.312. Solstice owns and operates Fernwood Academy ("Fernwood"), which is the school that Solstice's patients attend during their placement at Solstice.

3.313. While Sophia Hagar was placed at Solstice, she attended school at Fernwood.

3.314. Study Strategies is Fernwood's special education class.

3.315. After Sophia Hagar's first quarter at Fernwood, Fernwood and Solstice staff agreed that Sophia Hagar should be placed in Fernwood's Study Strategies class.

3.316. Sophia Hagar earned class credits and made academic progress through Fernwood Academy.

3.317. Other than for family visits that were a mandatory component of Sophia Hagar's Solstice program, Sophia remained at Solstice from July 24, 2018 to September 3, 2019.

3.318. The months away from school and family were excruciating but necessary for Sophia Hagar to stabilize.

3.319. While at Fernwood, Sophia Hagar frequently told her special education teacher

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

that she felt "stupid" and did not feel like she was "worth it" in terms of Fernwood staff supporting her in the classroom.

3.320. Solstice and Fernwood provided intensive support to Sophia Hagar to modify her negative self-talk and self-image as it relates to the academic setting.

3.321. Sophia Hagar's negative view of herself in the academic setting continues to be a work in progress that is an area of concern for her treating psychiatrist and therapist.

3.322. Out of necessity, Sophia Hagar spent more than one year away from her home in Washington with her parents due to her depression, anxiety, and issues with substance abuse, which are directly related to her experience at the District.

3.323. Patricia and Gabriel Hagar paid $204,562.55 for tuition and other costs related to Solstice.

### The 2018-19 school year

3.324. On August 22, 2018, Patricia Hagar initiated the process for Sophia Hagar to be evaluated by the Issaquah School District for eligibility for special education services.

3.325. The District's failure to meet its legal obligations to Sophia Hagar were systemic, ongoing, and part of a continuous course of conduct exhibited by the District at least until September of 2018, when the District agreed to schedule a guidance team meeting for Sophia Hagar.

3.326. In email communications dated September 5, 2018, IHS School Psychologist Melinda Mechler was under the impression that IHS employee Erin

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

Connolly was referring Sophia Hagar for a special education evaluation and Melinda Mechler attempted to persuade Erin Connolly to not refer Sophia Hagar for a special education evaluation.

3.327. On September 12, 2018, Patricia Hagar informed the District that they placed Sophia Hagar at Solstice and were requesting reimbursement.

3.328. On September 25, 2018, the District held a guidance team meeting for Sophia Hagar. According to the District, it declined to fund Sophia Hagar's unilateral placement at Solstice because Sophia Hagar's IEP team had not yet determined that Solstice RTC was necessary for Sophia Hagar's receipt of FAPE and Sophia Hagar was no longer living within District and, therefore, not entitled to any services from the District.

3.329. During the first or second week of October 2018, the District unenrolled Sophia Hagar because she missed 20 straight days of school.

3.330. On October 16, 2018, the District's legal counsel confirmed for Parents' counsel that the District unenrolled Sophia Hagar.

3.331. Brooks Power Group is a private company that offers, among other things, staff training to school district personnel, counseling, consultation, behavior support, evaluation and assessment services.

3.332. At all relevant times, includng from the 2015 school year to present day, Brooks Power Group had and continues to have a contractual relationship with the District.

3.333. From 2015 to present day, the District has paid Brooks Powers Group some amount of money each month for services rendered to the District by Brooks Powers Group.

3.334. The District contracted with Brooks Powers Group to evaluate Sophia Hagar.

3.335. Parents learned shortly thereafter that the District unenrolled Sophia Hagar.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.336. Parents moved from Issaquah, Washington to Bothell, Washington on December 20, 2018.

3.337. Parents moved from Issaquah, Washington to Bothell, Washington to avoid having student return to IHS's toxic school environment.

3.338. The District held an evaluation meeting for Sophia Hagar on February 6, 2019.

3.339. The District's evaluation team determined that Sophia Hagar was eligible for special education and related services under the eligibility category of "Health Impairments."

3.340. The District held an IEP team meeting for Sophia Hagar on March 14, 2019.

3.341. During the IEP team meeting, Parents notified the District that they had moved to Bothell, Washington.

3.342. The District informed Parents that their home was located within the Northshore School District and it would not provide special education services to Sophia Hagar

3.343. Nonetheless, the District finalized Sophia Hagar's IEP and recommended that she return immediately to a comprehensive high school.

3.344. Dr. Rowden did not believe Sophia Hagar was ready to return to a comprehensive high school and shared with the IEP team that he did not agree with the District's proposed placement.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.345. Had Sophia Hagar returned to the District, the District would have been unable to immediately implement with fidelity all of the interventions and supports recommended in Brooks Powers Group and the District's evaluation reports.

**September 2019 to Present Day**

3.346. Sophia Hagar was discharged from Solstice and joined Parents in Bothell, Washington, on September 3, 2019;

3.347. Tuition and other costs related to Sophia Hagar's placement at Solstice totaled $204,562.55.

3.348. Sophia Hagar required additional counseling and therapetuic services when she returned to Washington at additional cost to Patricia and Gabriel Hagar.

3.349. The best case scenario is that Sophia Hagar remains a recovering addict, a burden she carries as a direct result of the District's failure to meet her academic needs despite having information necessary to know the Districrt had a legal obligation to do so.

3.350. Sophia Hagar continues to receive treatment through her psychiatrist and therapist for her depression and anxiety disorders.  Sophia Hagar continues to be impacted to this day with feelings of anxiety related to school.  At times, Sophia Hagar is paralyzed and overwhelmed by school as a direct result of her experiences at the District and the District's failure to timely and meaningfully intervene.

3.351. Sophia Hagar continues to suffer from the actions of the District and will require psychiatric services and counseling for years to come due to her experiences at the District and the District's failure to timely and effectively intervene on her behalf.

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

3.352. Patricia and Gabriel Hagar have suffered from the actions of the District. Patricia and Gabriel Hagar have and continue to contribute to Sophia Hagar's support and wellbeing.  During Sophia Hagar's threat and attempt at suicide and other acts of self-harm they were there to support and comfort Sophia Hagar while she suffered. Patricia and Gabriel Hagar were unsure for a time whether Sophia Hagar would live past the age of sixteen.  They have supported and cared for her recovery.  When the District failed to provide Sophia Hagar with a free appropriate public education, they paid for her continuing education.

## IV. CAUSES OF ACTION

### A.    FIRST CAUSE OF ACTION: FEDERAL DISCRIMINATION AND CIVIL RIGHTS VIOLATIONS

Plaintiffs repeat and reallege paragraphs 1.1 through 3.352 as if fully set forth herein.

4.1    At all material times, the District was acting under color of law.

4.2    U.S. federal law protects Sophia Hagar from discrimination on the basis of disability.

4.3    By denying Sophia Hagar the accommodations, advantages, facilities, and/or privileges of a place of public accommodation, by failing to adequately respond to Sophia Hagar's needs in the educational setting the District discriminated against Sophia on the basis of her disability.

4.4    The District's actions and omissions as described herein were in violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. and its implementing regulations, and the Rehabilitation Act of 1973, Section 504 and its accompanying regulations.

COMPLAINT (JURY DEMAND)
- PAGE 42 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

4.5     By engaging in the acts and omissions described herein, the District, acting under color of law and with deliberate indifference, violated Sophia Hagar's rights under U.S. federal law to be free from discrimination on the basis of his disabilities.

4.6     By engaging in the acts and omissions described herein, the District, acting under color of law and with deliberate indifference, violated Sophia Hagar's rights under U.S. federal law to benefit from her education free from discrimination based on his disabilities.

4.7     At all relevant times, the Districts acts and omissions described herein, were ongoing, and part of a continuous course of conduct.

4.8     Sophia Hagar's right to be free from discrimination on the basis of her disabilities as described herein was clearly established in law at the time of the incidents alleged.

## B.  SECOND CAUSE OF ACTION: NEGLIGENCE

4.9     Plaintiffs repeat and reallege paragraphs 1.1 through 3.352 as if fully set forth herein.

4.10    The District owed Plaintiffs numerous duties.  Defendant's duties include, but are not limited to: (1) the duty to protect students in its custody from foreseeable harm; (2) the duty to anticipate harm which may reasonably be anticipated and to then take precautions to protect students in its custody from such harm; (3) the duty to protect students in its custody from assault, unwanted, and offensive touching by third parties; (4) the duty to adequately supervise and/or control so as to protect its students assault, unwanted, and offensive touching by third parties; (5) the duty to respond appropriately once aware that its students are being subject to such acts of assault, unwanted, and offensive touching by third parties; (6) the duty to protect its students' ability to maintain a healthy educational environment; (7) the duty to properly administer District

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

policies and procedures responsive to existing statutory mandate for school districts to enact and implement policies and protocols for the "recognition, screening, and response to emotional or behavioral distress in students" pursuant to RCW's 28A.320.127 and 1271; (8) the duty to properly ensure its employees are properly trained to perform their duties; and (9) the duty to hire, manage, and/or retain employees who are fit to perform their duties.

4.11    The District negligently breached each of the above duties.  Those breaches include, but are not limited to: 1) the failure to exercise reasonable care in response to reports of an assault; 2) the failure to exercise reasonable care in policy administration; 3) the failure to exercise reasonable care in ensuring employees were properly trained to perform their duties owed to Plaintiffs; 4) the failure to properly train and/or supervise employees.

4.12    As a direct and proximate result of its breaches of duty, Plaintiffs suffered damages set forth herein in an amount to be proven at trial.

## C.  THIRD CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

4.13    Plaintiffs repeat and reallege paragraphs 1.1 through 3.352 as if fully set forth herein.

4.14    Defendants negligently inflicted emotional distress upon the Plaintiffs, which was reasonably foreseeable.

4.15    In breaching its duties to the Plaintiffs to identify, evaluate and provide Sophia Hagar with appropriate services due to her disabilities and implement protocols for identifying and dealing with students in emotional distress, the District negligently inflicted emotional distress upon the Plaintiffs, directly and proximately causing Plaintiffs to suffer the damages set forth herein in an amount to be proven at trial.

COMPLAINT (JURY DEMAND)
- PAGE 44 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121

# VI.    REQUEST FOR RELIEF

**WHEREFORE, Plaintiffs request that this Court:**

Grant Plaintiffs request relief as follows:

A.      For judgment against Defendants for state and federal civil rights violations; state and federal unlawful discrimination; violations of RCW 28A et seq.; negligence; failure to supervise; and negligent infliction of emotional distress.

B.      For judgment against Defendant for all general and special damages in amounts to be proved at the time of trial;

C.      For an award of costs and attorney's fees; and

D.      For such other and further relief as the Court may deem just and equitable.

Dated this 22nd day of July, 2021.

s/ Lara Hruska
Lara Hruska, WSBA No. 46531
Alex Hagel, WSBA No. 55423
CEDAR LAW PLLC
113 Cherry Street, PMB 96563
Seattle, Washington 98104
Telephone: (206) 607-8277 Fax: (206) 237-9101
E-mail: lara@cedarlawpllc.com

s/ Ryan Ford
Ryan P. Ford, WSBA No. 50628
Ford Law Firm PLLC
6141 NE Bothell Way, Suite 203
Kenmore, WA 98028
Tel (206) 552-0258

*Attorneys for Plaintiffs*

COMPLAINT (JURY DEMAND)
- PAGE 45 OF 45 -

**FORD LAW FIRM PLLC**
6141 NE Bothell Way, Site 203
Kenmore, WA 98028
rpf@fordlawfirmpllc.com.com
Tel 206.552.0258 • Fax 206.260.9121